[No. A075759. First Dist., Div. Four. Sept. 29, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
BERNARD MERFELD, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B.

## COUNSEL

Arthur Lang Wong, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and Christina V. Kuo, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ANDERSON, J.***—This case presents an issue of first impression—whether the privilege against self-incrimination bars the prosecution from questioning an alleged mentally disordered offender (MDO) about his mental state at a Penal Code[1] section 2972 hearing.[2] We conclude that it does not.

## I. FACTS

### A. *Procedural Background*

Bernard Merfeld (appellant) was convicted of felony battery with serious injury (§ 243, subd. (d)). The trial court sentenced him to the time he had already served and granted him probation. He violated his probation eight months later by committing another battery, and was sentenced to two years in state prison. Upon completing this sentence, appellant was considered to be a mentally disordered offender and was sent to Atascadero State Hospital (ASH) as a condition of parole pursuant to section 2962.

Near the termination of the appellant's parole commitment, the district attorney filed a section 2970 petition to continue appellant's involuntary treatment. Appellant waived opposition to this petition,[3] and the trial court committed appellant to ASH for another year.

One year later the district attorney filed another petition to further extend appellant's commitment. Unlike the previous year, however, appellant did not waive his right to jury trial. During this trial, the jury deadlocked, and the court declared a mistrial. On retrial, the jury found that appellant had a severe mental disorder that was not in remission and that appellant represented a substantial danger of physical harm to others. The court ordered appellant to be recommitted to ASH for an additional year.

### B. *Section 2972 Hearing*

At the second trial, the jury heard evidence from appellant's psychiatrist, a psychiatric social worker, and a staff psychiatrist at ASH. They testified

---

*Retired Presiding Justice of the Court of Appeal, First District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

[2] Although *People* v. *Pretzer* (1992) 9 Cal.App.4th 1078 [11 Cal.Rptr.2d 860] and *People* v. *Superior Court (Myers)* (1996) 50 Cal.App.4th 826 [58 Cal.Rptr.2d 32] addressed related questions, neither reached the issue before us. *Pretzer* dealt with a section 2962 commitment and a section 2966 hearing. *Myers* examined whether section 2970 was an ex post facto law.

[3] Section 2972 provides for a hearing on a section 2970 petition, as discussed more fully in part II.A., *post.*

that appellant had a "schizophenia-type illness along with a bipolar or manic-depressive-type illness . . . ." They further testified that this illness was not in remission and opined that if released appellant would present a danger to others. Based on these opinions, they concluded that he should not be released from treatment.

Over objection, the district attorney was permitted to call appellant to testify in the prosecution's case-in-chief. His testimony was contradictory and, at times, incoherent. He stated that he did not believe in the devil, then went on to say he did not like the devil and that he thought a staff psychiatrist at ASH was the devil. When first asked whether he had a mental disorder appellant stated that he did. However, in answering another question, he stated that he did not have a mental disorder. At one point during the direct examination appellant lost his train of thought and claimed he had "Alzheimer's Disease." Later in the questioning he claimed to have regained his train of thought, only to give incoherent testimony about war, English inventors, being 69 years old, smoking cigarettes, winning the lottery, and killing the "Loch Ness Monster."

The defense neither examined appellant nor introduced evidence on his behalf.

## II. ANALYSIS

### A. *The Trial Court Did Not Violate Appellant's Privilege Against Self-incrimination by Allowing the District Attorney to Question Him About His Mental State*

■ Appellant contends that the nature of the extended commitment as prescribed by the MDO law is essentially punitive. He contends that the deprivation of liberty and the conditions of confinement at ASH amount to punishment. Thus, he argues that he had an absolute right not to testify at his section 2972 trial because it is essentially a criminal prosecution.

■ The privilege against self-incrimination is guaranteed by both the federal and state Constitutions. (Amend. V of the U.S. Const. and art. I, § 15 of the Cal. Const. as codified in Evid. Code, § 930.) As pointed out by the California Supreme Court, "two separate and distinct testimonial privileges" exist under this guarantee. (*Cramer* v. *Tyars* (1979) 23 Cal.3d 131, 137 [151 Cal.Rptr. 653, 588 P.2d 793].) First, a defendant in a criminal case "has an absolute right not to be called as a witness and not to testify." (*Ibid.*) Second, "in any proceeding, *civil or criminal*, a witness has the right to decline to answer questions which may tend to incriminate him [or her] in criminal activity [citation]." (*Ibid.*, original italics.)

In determining whether appellant's contention has merit, we begin by examining the MDO statute itself. Section 2972 provides that "a hearing on the petition under Section 2970 . . . shall be a civil hearing . . . ." (§ 2972, subd. (a).) It requires a jury to find "that the patient has a severe mental disorder, that . . . is not in remission . . . , and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others . . . ." (§ 2972, subd. (c).) In addition, it "places an affirmative obligation on the treatment facility to provide treatment for the underlying causes of the person's mental disorder." (§ 2972, subd. (f).) However, it also provides the MDO with the rights to counsel, jury trial, and criminal discovery. (§ 2972, subd. (a).) Further, section 2972 requires that a jury "be unanimous in its verdict," and that its findings be by proof beyond a reasonable doubt. (*Ibid.*)

By expressly stating that the hearing under section 2972 is to be civil in nature, the Legislature has clearly indicated that the proceeding should not be deemed punitive. However, as appellant correctly contends, "the civil label is not always dispositive. Where a defendant has provided 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' that the proceeding be civil, it must be considered criminal, and the privilege against self-incrimination must be applied. [Citation.]" (*Allen* v. *Illinois* (1986) 478 U.S. 364, 369 [106 S.Ct. 2988, 2992, 92 L.Ed.2d 296].)

In attempting to prove that the primary purpose of the MDO law is punitive, appellant first calls attention to the procedural safeguards provided for by the statute. He asserts that the state provides these safeguards because of the potential for incarceration. However, the Legislature's decision "to provide some of the safeguards applicable in criminal trials cannot itself turn these proceedings into criminal prosecutions requiring the full panoply of rights applicable there." (*Allen* v. *Illinois, supra,* 478 U.S. at p. 372 [106 S.Ct. at p. 2993].)

Next, appellant argues that the state "evinces a keen interest in punishment . . . because it requires the prisoners to serve their entire criminal sentences before being committed or treated." Not so! The Legislature has expressly provided that "the Department of Corrections should evaluate each prisoner for severe mental disorders during the first year of the prisoner's sentence, and that severely mentally disordered prisoners should be provided with an appropriate level of mental health treatment *while in prison* . . . ." (§ 2960, italics added.)

Appellant also argues that the MDO law is punitive in effect. He claims that the deprivation of liberty and the prevailing conditions of confinement

at ASH are the functional equivalent of punishment. In particular, he notes the high, razor-wire-topped fences that surround ASH; the restricted freedom of movement; the use of five-point restraints on those committed; the indeterminate period of confinement they face; and the fact that they receive working wages as do prisoners under the Department of Corrections. Thus, argues appellant, no essential distinction exists between the conditions at ASH and those faced by felons without need of psychiatric care.

This argument, however, ignores the teachings of *Allen* v. *Illinois, supra,* 478 U.S. 364. *Allen* involved a defendant facing criminal charges of unlawful restraint and deviate sexual assault, as well as a petition to declare him a sexually dangerous person under the Illinois Sexually Dangerous Persons Act.[4] Pursuant to this statute Allen was examined by two psychiatrists. At his commitment trial, two psychiatrists testified that Allen was mentally ill and dangerous. The defense had objected, unsuccessfully, to admitting this evidence, claiming that the psychiatrists' examinations of Allen violated his privilege against self-incrimination. The *Allen* court thus stated the issue as follows: "What we have here, then, is . . . [Allen's claim] that, because the sexually-dangerous-person proceeding is itself 'criminal,' he was entitled to refuse to 'answer any questions at all." (*Id.* at p. 368 [106 S.Ct. at pp. 2991-2992].)

Thus, faced with an issue similar to that before us, the *Allen* court concluded that ". . . the State serves its purpose of *treating* rather than punishing, [persons with severe mental disorders] by committing them to an institution expressly designed to provide psychiatric care and treatment." (*Allen* v. *Illinois, supra,* 478 U.S. at p. 373 [106 S.Ct. at p. 2994], original italics.) ASH certainly serves this purpose. It confines only committees in need of psychiatric treatment. Thus, it cannot be said that no essential distinction exists between state prison and ASH. Additionally, the fact that the state hospital is a maximum security facility does not render commitment there punitive. (*Ibid.*) "[The state's] decision to *supplement* its *parens patriae* concerns with measures to protect the welfare and safety of other citizens does not render [a statute] punitive." (*Ibid.*, italics added.)

Finally, we note that the Second District Court of Appeal has concluded, albeit in a different context, that the extended commitment provided for under section 2970 "does not subject a mentally disordered offender to *any* punitive ramifications." (*People* v. *Superior Court (Myers), supra,* 50

---

[4]Under that act, a person found to be sexually dangerous is to be involuntarily confined in a facility designed to provide psychiatric care. Staff psychiatrists are required to review the person's progress at least every six months, and the person may request a review hearing at any time.

Cal.App.4th at p. 840, italics added [MDO statute is not an ex post facto law because it is not a criminal statute].)

We agree with *Meyers* that the extended commitment hearing under section 2972 is not punitive, and we therefore conclude that appellant is not entitled to a criminal defendant's absolute right to refuse to testify.

This conclusion, nevertheless, does not completely resolve appellant's appeal. A witness still retains the right to refuse to answer any question in any hearing, civil or criminal, that may tend to incriminate him or her in criminal activity. Despite this privilege, however, "no witness has a privilege to refuse to reveal to the trier of fact his physical or mental characteristics where they are relevant to the issues under consideration." (*Cramer* v. *Tyars*, *supra*, 23 Cal.3d at p. 137.)

In *Cramer*, our Supreme Court faced the issue of whether a mentally retarded person could be called to testify at his own civil commitment hearing. The petition for commitment was filed under the former Welfare and Institutions Code section 6502.[5] When *Cramer* was decided, the Act applied to mentally retarded persons who posed a danger to themselves or others. It called for a hearing on the issue of commitment, and conferred some procedural safeguards applicable to criminal trials, i.e., the rights to counsel, to trial by jury and to a unanimous verdict supported by proof beyond a reasonable doubt. Under the Act those mentally retarded persons found to be a danger to themselves or others could be committed to the State Department of Health for one year. This commitment was subject to renewal by the same petition process.

At Tyars's commitment trial, the district attorney called medical examiners to testify as to Tyars's condition. Then, the district attorney called Tyars, himself, to testify. The defense unsuccessfully objected, claiming it violated Tyars's privilege against self-incrimination. The California Supreme Court concluded that the Act was not criminal in nature, and thus, Tyars did not have an absolute right to refuse to testify.

Thus, we conclude, as did the *Cramer* court, "that, while appellant could not be questioned about matters that would tend to incriminate him, he was subject to call as a witness and could be required to respond to nonincriminatory questioning which may have revealed his mental condition to the jury, whose duty it was to determine whether he was [severely mentally disordered]." (*Cramer* v. *Tyars*, *supra*, 23 Cal.3d at p. 139.) A careful review

---

[5]Welfare and Institutions Code sections 6500-6512, also known as the Lanterman-Petris-Short Act (the Act), have been modified since the *Cramer* ruling.

of the examination of appellant reveals that he was asked no question which could incriminate him in violation of his Fifth Amendment rights.

B. *The Trial Court Properly Instructed the Jury on Reasonable Doubt by Reading the Revised Version of CALJIC No. 2.90\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. CONCLUSION

The judgment is affirmed.

Reardon, Acting P. J., and Hanlon, J., concurred.

A petition for a rehearing was denied October 27, 1997.

---

\*See footnote *ante,* page 1440.