[No. B178524. Second Dist., Div. Six. Aug. 16, 2005.]

THE PEOPLE, Plaintiff and Appellant, v.
DACOSTA BURROUGHS, Defendant and Respondent.

1402

COUNSEL

Gerald T. Shea, District Attorney, and Sandra L. Mitchell for Plaintiff and Appellant.

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**COFFEE, J.**—A recommitment under the mentally disordered offender (MDO) law requires proof beyond a reasonable doubt that (1) the patient has a severe mental disorder; (2) the disorder "is not in remission or cannot be kept in remission without treatment"; and (3) by reason of that disorder, the patient represents a substantial danger of physical harm to others. (Pen. Code, § 2970.)[1] The Legislature has provided that a patient " 'cannot be kept in remission without treatment' if during the year prior to the question being before the Board of Prison Terms or a trial court, he or she has been in remission and he or she has been physically violent, except in self-defense . . . ." (§ 2962, subd. (a).) We conclude that this provision is a rule of substantive law that requires a positive finding on the "remission" criterion, rather than an unlawful mandatory presumption.

### BACKGROUND

Respondent Dacosta Burroughs suffers from paranoid schizophrenia. He was convicted of rape and sentenced to prison. The Board of Prison Terms (BPT) has twice determined that Burroughs is an MDO and committed him to Atascadero State Hospital (ASH) for treatment. Burroughs filed a petition in superior court challenging the latest BPT determination. (§ 2966.) He waived his right to a jury and the case was tried before the court.

Dr. Phillip Kelly has been Burroughs' treating psychiatrist at ASH since 2003. He testified that Burroughs was in remission as of the date of the BPT hearing on June 9, 2004, but had been in a fight with another patient within the previous year. During that fight, Burroughs spit on the other patient, hit him and struggled with staff before being placed in restraints. Dr. Kelly noted that while Burroughs did not have any acute psychotic symptoms, he did continue to have problems with female staff. Because of the rape conviction, Dr. Kelly would want to see Burroughs try outpatient treatment before rendering an opinion that he was not dangerous.

The trial court determined that within the year prior to the BPT hearing, Burroughs had been physically violent, not in self-defense, within the meaning of section 2962, subdivision (a). Notwithstanding, the court found that Burroughs was currently in remission, and therefore did not meet this criterion for an MDO commitment. The court noted that Burroughs did meet the remaining criteria for a continuing MDO commitment, namely, that he suffered from a severe mental disorder and that he presented a substantial danger of physical harm to others as a result of this disorder. (§ 2970.) The People appeal from the court's ruling that Burroughs was not an MDO.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

## DISCUSSION

Section 2962, subdivision (a) provides, "A person 'cannot be kept in remission without treatment' if during the year prior to the question being before the Board of Prison Terms or a trial court, he or she has been in remission and he or she has been physically violent, except in self-defense, or he or she has made a serious threat of substantial physical harm upon the person of another so as to cause the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family, or he or she has intentionally caused property damage, or he or she has not voluntarily followed the treatment plan." Remission is defined as "a finding that the overt signs and symptoms of the severe mental disorder are controlled either by psychotropic medication or psychosocial support." (*Ibid.*)

The People argue that because Burroughs was physically violent within a year of the hearing, he "cannot be kept in remission without treatment," and thus met the remission criterion of section 2970. Burroughs responds that the statute would operate as an impermissible mandatory presumption if it were construed to mean that an act of physical violence within the prior year automatically meant a finding that a patient met the remission criterion.

■ A mandatory rebuttable presumption is an evidentiary device that tells the trier of fact it *must* find the existence of some ultimate or elemental fact upon proof of a basic or evidentiary fact. (Evid. Code, § 600, subd. (a); *People v. McCall* (2004) 32 Cal.4th 175, 182 [8 Cal.Rptr.3d 337, 82 P.3d 351]; see also *Ulster County Court v. Allen* (1979) 442 U.S. 140, 157 [60 L.Ed.2d 777, 99 S.Ct. 2213].) Such presumptions may violate the defendant's right to due process in a criminal case, where the prosecution bears the burden of proof beyond a reasonable doubt and the presumption may have the effect of lessening this burden on the element to which it applies. (*McCall*, at p. 183.) Although an MDO proceeding is civil in nature, the People are required to prove MDO status beyond a reasonable doubt. (§ 2972, subd. (a).) A mandatory rebuttable presumption would violate a patient's right to due process if it had the effect of lessening the People's burden of proof on any of the MDO criteria.

■ But a distinction must be drawn between mandatory rebuttable presumptions, which operate as evidentiary devices, and mandatory conclusive presumptions, which operate as rules of substantive law. (*People v. McCall, supra*, 32 Cal.4th at pp. 184–185; see also Evid. Code, § 620.) " 'Wherever from one fact another is said to be conclusively presumed, in the sense the opponent is absolutely precluded from showing by any evidence that the second fact does not exist, the rule is really providing that where the first fact is shown to exist, the second fact's existence is wholly immaterial for the

purpose of the proponent's case; and to provide this is to make a rule of substantive law and not a rule apportioning the burden of persuading as to certain propositions or varying the duty of coming forward with the evidence.' " (*McCall*, at p. 185.) A conclusive presumption that operates as a rule of substantive law does not violate due process by lessening the burden of proof. (*Id.* at pp. 185–186.)

For example, in *People v. McCall, supra*, 32 Cal.4th 175, the court considered the effect of Health and Safety Code section 11383, subdivisions (c)(2) and (f), which criminalizes the possession of hydriodic acid with the intent to manufacture methamphetamine and provides that " 'possession of immediate precursors sufficient for the manufacture of . . . hydriodic acid . . . shall be deemed to be possession of the derivative substance.' " (*McCall*, at p. 190.) The defense argued that this created a mandatory rebuttable presumption which relieved the prosecution of its burden of proving the defendant possessed hydriodic acid. (*Id.* at pp. 187–188.) The court disagreed. "[S]ection 11383(f) contained no presumption at all. Instead, section 11383(f) was nothing more than a definitional section that specified the conduct 'deemed' criminal . . . . Substantive due process allows lawmakers broad power to select the elements of crimes, and to define one thing in terms of another." (*Id.* at p. 189.)

Similarly, in *People v. Pinkston* (2003) 112 Cal.App.4th 387 [5 Cal.Rptr.3d 274], the court rejected an argument that Vehicle Code section 2800.2 creates an impermissible mandatory presumption. Subdivision (a) of that statute makes evasion of a peace officer a felony if "the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property . . . ." Subdivision (b) provides, "For the purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under [Vehicle Code] Section 12810 occur, or damage to property occurs." The court concluded that subdivision (b) established a rule of law rather than a presumption apportioning the burden of persuasion on an element of the crime. "In other words, evasive driving during which the defendant commits three or more specified traffic violations *is* a violation of section 2800.2 '*because of the substantive statutory definition of the crime*' rather than because of any presumption." (*Pinkston*, at pp. 392–393.)

■ Like the statutes at issue in *McCall* and *Pinkston*, section 2962, subdivision (a) creates a rule of substantive law. It defines the phrase "cannot be kept in remission without treatment" to mean that one of four specified acts have occurred during the previous year—a violent act except in self-defense, a serious threat, intentional property damage or failure to follow the treatment plan. This language does not allow the jury to presume remission from one of these facts, as Burroughs argues; it does not purport to define remission at all. Rather, it defines in precise terms the conduct that will show the patient "cannot be kept in remission without treatment," which is an alternative basis of satisfying the remission criterion for an MDO recommitment.

■ Once the People proved that Burroughs committed a violent act within the previous year, they established that he could not be "kept in remission without treatment" as that phrase is used in the MDO law. (See *In re Qawi* (2004) 32 Cal.4th 1, 23 [7 Cal.Rptr.3d 780, 81 P.3d 224]; see also *People v. Beeson* (2002) 99 Cal.App.4th 1393, 1400 [122 Cal.Rptr.2d 384].) There was no ultimate fact to be presumed; the People simply proved the conduct necessary to satisfy the remission criterion. The trial court erred when it found that criterion was not met and its judgment must be reversed.[2]

Burroughs argues that section 2962, subdivision (a) renders the MDO law unconstitutional if a violent act during the necessary time period is itself enough to satisfy the remission criterion. He reasons that an involuntary commitment is constitutional only if the subject currently suffers from a mental abnormality that renders him dangerous beyond his control. (*In re Howard N.* (2005) 35 Cal.4th 117, 132 [24 Cal.Rptr.3d 866, 106 P.3d 305].) Thus, when an MDO patient suffers no overt symptoms of his mental illness, but technically meets the remission criterion due to a violent act during the preceding year, the requirement of current dangerousness is not met.

■ We are not persuaded. The remission criterion is only one of three elements necessary to support recommitment as an MDO. Assuming it is met by virtue of a violent act within the previous year, the People must still prove that the patient suffered from a severe mental disorder and that he continued to present a substantial danger of physical harm to others by reason of his disorder. A patient who was currently in remission and who, as a consequence, did not present a current danger to others would not be recommitted as an MDO even if the court determined he could not be "kept in remission

---

[2] Principles of double jeopardy are inapplicable because an MDO proceeding is civil in nature. (*People v. Francis* (2002) 98 Cal.App.4th 873, 877 [120 Cal.Rptr.2d 90].)

without treatment" as defined by section 2962, subdivision (a). And a patient like Burroughs, who has no present symptoms and is technically in remission, but who has committed a violent act within the past year and continues to present a substantial risk of physical harm by reason of his mental disorder, is a suitable subject for involuntary commitment under the MDO law due to his current dangerousness. The Legislature has reasonably determined that when a patient has committed a violent act, *in addition to suffering from a severe mental disorder that renders him a danger to others*, he cannot safely reenter society. (See *People v. Beeson, supra*, 99 Cal.App.4th at p. 1400.) This is not tantamount to punishment, as the dissent suggests; it is a method of gauging the patient's current condition.

The judgment is reversed and the case is remanded with directions that the superior court enter a judgment continuing Burroughs as an MDO under section 2970.

Perren, J., concurred.

**YEGAN, Acting P. J.**—I respectfully dissent. In mentally disordered offender (MDO) law, "[t]he term 'remission' means a finding that the overt signs and symptoms of the severe mental disorder are controlled either by psychotropic medication or psychosocial support." (Pen. Code, § 2962, subd. (a).)[1] The majority hold that if an MDO has been physically violent during the year period before a recommitment determination is made, the trial court is automatically required to find that he is not in remission within the meaning of section 2962 subdivision (a). As I shall explain, this holding makes section 2962 subdivision (a) a mandatory presumption which violates an MDO's constitutional due process rights. It also has the effect of rendering the remaining commitment time tantamount to punishment, contrary to the purpose of the MDO statutory scheme. In these circumstances, section 2962 subdivision (a) should be construed as a permissive presumption so as to preserve its constitutionality.

The People argue that the spitting incident was an act of violence within the meaning of section 2962 subdivision (a) and this required automatic recommitment. Section 2962 subdivision (a) provides: "A person 'cannot be kept in remission without treatment' if during the year prior to the question being before the Board of Prison Terms or a trial court, he or she has been in

---

[1] All statutory references are to the Penal Code.

remission and he or she has been physically violent, except in self-defense, or he or she has made a serious threat of substantial physical harm upon the person of another . . . , or he or she has intentionally caused property damage, or he or she has not voluntarily followed the treatment plan."

The trial court stated that "I am not bound by the statute" and that respondent has "been in remission for a long time . . . . [T]he only reason to say he cannot be kept in remission had to do with this one event where he spit at a patient, and I did find that was not in self-defense." The trial court found that respondent is "in remission, and he can be kept in remission."

The People contend and the majority hold that section 2962 subdivision (a) is a rule of substantive law, which required the trial court to find, as a matter of law, that respondent was not in remission. As a matter of statutory construction, section 2962 subdivision (a) should be construed to avoid doubts concerning its constitutionality. (E.g., *United States v. Bass* (1971) 404 U.S. 336, 348 [30 L.Ed.2d. 488, 496–497, 92 S.Ct. 515]; *In re Howard N.* (2005) 35 Cal.4th 117, 135–136 [24 Cal.Rptr.3d 866, 106 P.3d 305]; *People v. Roder* (1983) 33 Cal.3d 491, 505–506 [189 Cal.Rptr. 501, 658 P.2d 1302].)

Although MDO proceedings are civil in nature, the Legislature has provided certain due process protections including the requirement that the People prove the statutory criteria beyond a reasonable doubt. (§ 2972, subd. (a); *People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1275 [123 Cal.Rptr.2d 535].) It is settled that evidentiary presumptions that reduce the People's burden of proving every element of an offense violates a defendant's due process rights. (*Ulster County Court v. Allen* (1979) 442 U.S. 140, 156 [60 L.Ed.2d 777, 789–792, 99 S.Ct. 2213]; *People v. Roder, supra,* 33 Cal.3d at pp. 496–497.) An MDO finding is not a crime but does have elements, one of which is nonremission.

Our courts draw a sharp distinction "between a *permissive* presumption and a *mandatory* presumption. A permissive presumption allows—but does not require—the trier of fact to infer the ultimate fact from proof by the prosecutor of the 'basic' fact, and places no burden of any kind on defendant. A *mandatory* presumption tells the trier of fact that it *must* find the 'elemental fact' upon proof of the 'basic fact' unless the defendant comes forward with some evidence to rebut the presumed connection between the two facts. [Citation.]" (*People v. Milham* (1984) 159 Cal.App.3d 487, 503 [205 Cal.Rptr. 688], citing *People v. Roder, supra,* 33 Cal.3d at pp. 497–498.)

Relying on *People v. McCall* (2004) 32 Cal.4th 175 [8 Cal.Rptr.3d 337, 82 P.3d 351], the People contend that section 2962, subdivision (a) is a rule of substantive law rather than an evidentiary presumption. In *McCall,* the defendant was prosecuted for possession of hydriodic acid with intent to manufacture methamphetamine. (Health & Saf. Code, § 11383, subd. (c)(2).) The trial court instructed the jury, pursuant to Health and Safety Code section 11383, subdivision (f), that possession of red phosphorus and iodine " 'sufficient for the manufacture of hydriodic acid with the intent to manufacture methamphetamine, *shall be deemed* to be' " unlawful possession of hydriodic acid. (*People v. McCall, supra,* 32 Cal.4th at p. 181, italics added.) The California Supreme Court held that Health and Safety Code section 11383, subdivision (f), with its "shall be deemed" language, was not an evidentiary presumption. (32 Cal.4th at p. 188.) "The phrase 'shall be deemed,' as utilized in section 11383(f), simply created a rule of substantive law; to wit, the possession of red phosphorous and iodine with intent to manufacture methamphetamine was the *legal equivalent* of possession of hydriodic acid with intent to manufacture methamphetamine." (*Ibid.*) The court explained that "the definitional phrase 'shall be deemed' is a legislative staple that appears in thousands of California statutes." (*Ibid.*)

Unlike *McCall,* the MDO law does not contain a "shall be deemed" definitional phrase. Our Supreme Court, in dicta, has indicated that section 2962, subdivision (a) is permissive: "The MDO Act's definition of the phrase 'cannot be kept in remission without treatment' *may be met* by a finding of recent dangerousness . . . ." (*In re Qawi* (2004) 32 Cal.4th 1, 24 [7 Cal.Rptr.3d 780, 81 P.3d 224], italics added.) An act of physical violence committed nine months before the Board of Prison Terms or the trial court make its determinations, cannot logically be the "legal equivalent" of nonremission months later. But it *may* be evidence of nonremission. A mandatory presumption is reconcilable with the prosecution's burden of proof "only if the basic fact proved *compels* the inference" that the severe mental disorder is not in remission. (*People v. Roder, supra,* 33 Cal.3d at p. 498, fn. 7.) Here, the spitting incident does not "compel" the inference of "non-remission" nine months later. Contrary to the majority view, committing an act of physical violence not in self-defense does not create an "alternate basis" for satisfying the nonremission requirement. (Maj. opn., *ante,* at p. 1407) It is just one way to prove the element of "non-remission."

Pursuant to the People's construction of section 2962 subdivision (a), as adopted by the majority, an act of physical violence on the first day of an

MDO recommitment requires an MDO to serve 364 days of confinement before facing automatic recommitment for another year even though treatment has been successful and the severe mental disorder is in remission. If this is so, the remaining 364 days of recommitment time is tantamount to punishment. This would undermine, if not totally eviscerate, the underlying purpose of the MDO law which is to provide MDO's with treatment while at the same time protect the general public from the danger posed by an offender with a mental disorder. (§ 2960; *In re Qawi, supra,* 32 Cal.4th at p. 9; *People v. Merfeld* (1997) 57 Cal.App.4th 1440, 1444 [67 Cal.Rptr.2d 759] [MDO law is not punitive in purpose or effect].) "The purpose of the MDO statutory scheme is to provide *mental health treatment* for those offenders who are suffering from *presently severe mental illness,* not to punish them for their past offenses." (*People v. Superior Court (Myers)* (1996) 50 Cal.App.4th 826, 837 [58 Cal.Rptr.2d 32].)

Section 2962, subdivision (a) should be construed as a permissive presumption, which allows, but does not require, the trier of fact to infer that a severe mental disorder is not in remission. (See *In re Howard N., supra,* 35 Cal.4th at pp. 135–136 [interpreting Welf. & Inst. Code, § 1800 to preserve statute's constitutionality for extended civil commitment of Youth Authority ward].) We have previously held that the trier of fact is required to take a "snapshot view" of the defendant's mental status as of the time of the BPT hearing. (*People v. Tate* (1994) 29 Cal.App.4th 1678, 1682 [35 Cal.Rptr.2d 250].) The "snapshot view" is not to be taken at the time of a previous act of physical violence. Section 2962 subdivision (a) permits the trier of fact to look at certain factors from which it can infer that the severe mental disorder cannot be kept in remission. Those factors include a physical act of violence not in self-defense, serious threats of substantial physical harm upon another, intentionally causing property damage, or failure to voluntarily follow the treatment plan. (*In re Qawi, supra,* 32 Cal.4th at p. 24; see also *People v. Beeson* (2002) 99 Cal.App.4th 1393, 1400 [122 Cal.Rptr.2d 384] [Legislature has provided "additional factors in gauging a person's current condition."].)

Although respondent was involved in an altercation nine months before the BPT hearing, the evidence showed that he was in remission, was following the treatment plan, and could control his behavior without endangering the public. The trial court found that respondent "has been doing everything he needs to do, and is on meds and is in remission[;] it's hard to ignore that cooperation, and what he's doing. And Dr. Kelly said he would like to see him on conrep [i.e. an outpatient treatment program]."

The majority concludes that section 2962, subdivision (a) trumps the trial court's factfinding powers and requires, as a matter of law, that respondent be recommitted for another year. If the majority is correct, an MDO who has been physically violent not in self-defense will not have much of a recommitment trial. The People need only call a lay witness to testify to the act of physical violence. All other evidence, including psychiatric testimony would be irrelevant. This does not sound like due process of law to me.

Respondent's petition for review by the Supreme Court was denied November 16, 2005.