[No. B181560. Second Dist., Div. Six. Jan. 30, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
TODD FISHER, Defendant and Appellant.

[blacked out]

## COUNSEL

Ruddy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Susan D. Martynec, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**YEGAN, Acting P. J.**—Todd Fisher appeals from a jury verdict declaring him to be a mentally disordered offender (MDO) within the meaning of Penal

Code section 2960 et seq.[1] As we shall explain, appellant has made some poor choices. All mental health professionals agree that appellant is an MDO. Appellant himself told the jury that he lives in "la la land" and is "crazy." He also told the jury: "I have a mental disorder." These candid admissions, his failure to participate in any treatment at Atascadero State Hospital, his waiver of the right to counsel, his insistence on the right to represent himself, and his sorry performance at trial sealed his fate with the jury.

Appellant contends the trial court erred when it required him to wear leg restraints in the courtroom. He also contends he was denied the right to counsel and "forced" to represent himself at trial because the trial court refused to order his court-appointed attorney to try the matter before a jury. We affirm.

## Facts and Proceedings

In January 2002, appellant was convicted of forcible oral copulation in violation of section 288a, subdivision (c)(2) and unlawful sexual intercourse with a minor, in violation of section 261.5, subdivision (c). He was sentenced to a term of three years in state prison. In November 2004, the Board of Prison Terms certified appellant as an MDO. Appellant was placed in Atascadero State Hospital for hospitalization and treatment.

Dr. Richard Kendall, appellant's treating psychologist, diagnosed appellant as suffering from paraphilia. His treatment team has also seen evidence that appellant may suffer from a psychotic disorder. Dr. Kendall opined that a complete diagnosis was complicated by the fact that appellant has refused all psychological testing and every form of treatment.[2] He based his diagnosis on his personal contacts with appellant and on appellant's state hospital chart. The chart includes appellant's medical records, "legal information, information regarding his controlling offense, it includes psychological or psychiatric evaluations. It includes social work evaluations as well."

Two other evaluators testified that appellant suffers from paraphilia and from psychotic disorder, not otherwise specified. These evaluators based their diagnoses based only on appellant's prison and hospital records because appellant refused to be interviewed by them.

The trial court appointed counsel to represent appellant. Counsel waived a jury trial over appellant's objection. Appellant moved to discharge his

---

[1] All statutory references are to the Penal Code.

[2] The failure to follow a treatment plan shows that the MDO's severe mental disorder is not in remission. (§ 2962, subd. (a); *People v. Beeson* (2002) 99 Cal.App.4th 1393, 1399 [122 Cal.Rptr.2d 384]; *People v. Burroughs* (2005) 131 Cal.App.4th 1401, 1405 [32 Cal.Rptr.3d 729].)

attorney and to exercise his statutory right to represent himself. (See *People v. Williams* (2003) 110 Cal.App.4th 1577, 1588, 1591–1592 [2 Cal.Rptr.3d 890].) When the motion was granted, appellant demanded a jury trial. The trial court honored appellant's jury demand.

Appellant was secured to counsel's table with a chain attached to his wrist for the first day of trial, which included jury selection. On the second day of trial, before the jury entered the courtroom, the trial court inquired whether it would be possible to unchain appellant for the remainder of the proceedings. The prosecutor explained that custody staff believed appellant was dangerous and an escape risk because of three incidents that occurred at the state hospital. In one incident, hospital staff found a sharpened comb in appellant's room and a sharpened plastic knife on his person. In another, they found a four-inch sewing needle in his room. Appellant explained to staff, "They aren't shanks, I just needed a screwdriver because I'm like MacGyver. I've never hurt anyone in my life." On another occasion, appellant climbed a tree in the hospital yard and threatened to kill and "fight to the death" with anyone who came up after him.

The trial court found that appellant was an escape risk and ordered that he be secured to the table by a shackle on one leg. Appellant's hands were free and he was able to stand when questioning a witness or addressing the court or the jury. Appellant did not object to the shackling.

As indicated, Dr. Kendall and two independent evaluators, Drs. Starrett and Stark, testified in the prosecution's case and opined that appellant met the MDO criteria. Appellant cross-examined each witness. He also testified, tendering a feeble explanation of his predicament. The jury deliberated for about three hours before returning its verdict finding that appellant met the MDO criteria.

### Use of Shackles

Appellant contends the trial court erred when it required him to wear a leg restraint because the information presented by the prosecutor did not justify restraints and because the trial court did not give appellant an opportunity to respond before making its ruling. Respondent contends that the restrictions on shackling that apply in a criminal proceeding do not apply here because an MDO proceeding is civil in nature and does not "implicate the constitutional rights afforded to criminal defendants." (*People v. Beeson, supra,* 99 Cal.App.4th at p. 1407.)

Any error was waived because appellant did not object to wearing a leg restraint. (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 583 [15 Cal.Rptr.2d 382,

842 P.2d 1142].) While the trial court did not solicit comment or argument from appellant on this point, there is no indication that it would have forbidden appellant to challenge the use of restraints. The fact that he did not do so in this instance shows that he was satisfied with the arrangement.

■ On the merits, we hold that the rules attendant to shackling in a criminal proceeding apply to MDO proceedings. " '[A] defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a *manifest need for such restraints.* [Citation.]' ([*People v. Duran* (1976) 16 Cal.3d 282, 290–291 [127 Cal.Rptr. 618, 545 P.2d 1322]], italics added, fn. omitted; see also § 688 ['No person charged with a public offense may be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge.'].) Such a ' "[m]anifest need" arises only upon a showing of unruliness, an announced intention to escape, or "[e]vidence of any nonconforming conduct or planned nonconforming conduct which disrupts or would disrupt the judicial process if unrestrained . . . ." ' (*People v. Cox* (1991) 53 Cal.3d 618, 651 [280 Cal.Rptr. 692, 809 P.2d 351] (hereafter *Cox*), quoting *Duran, supra,* at p. 292, fn. 11.) 'Moreover, "[t]he showing of nonconforming behavior . . . must appear as a matter of record . . . . The imposition of physical restraints in the absence of a record showing of violence or a threat of violence or other nonconforming conduct will be deemed to constitute an abuse of discretion." ' (*Cox, supra,* at p. 651, quoting *Duran, supra,* at p. 291.) A court's decision to place a defendant in physical restraints will not be overturned on appeal unless there is a 'showing of a manifest abuse of discretion.' (*Duran, supra,* at p. 293, fn. 12; *Cox, supra,* at p. 652; *People v. Sheldon* (1989) 48 Cal.3d 935, 945–946 [258 Cal.Rptr. 242, 771 P.2d 1330].)" (*People v. Hill* (1998) 17 Cal.4th 800, 841 [72 Cal.Rptr.2d 656, 952 P.2d 673].)

■ Here, the trial court's order is supported by the record. The unchallenged information provided by the prosecutor supports the trial court's finding that appellant was an escape risk, a circumstance justifying the use of restraints. (*Cox, supra,* 53 Cal.3d at p. 651.) Moreover, unjustified shackling is considered harmless error "where there was no evidence it was seen by the jury." (*People v. Tuilaepa, supra,* 4 Cal.4th at pp. 583–584; see *Cox, supra,* 53 Cal.3d at p. 652 [unjustified use of single handcuff and leg brace was harmless here where "the jurors apparently were never aware of either form of restraint"].) That is the case here. There is no evidence the jury could see the shackles or the single wrist cuff he wore on the first day. We conclude the use of restraints, even if erroneous, did not hinder appellant's ability to represent himself or deny him a fair trial. Thus, any error was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People v. Jackson* (1993) 14 Cal.App.4th 1818, 1829 [18 Cal.Rptr.2d 586].)

---

*Right to Counsel/Self-representation/Jury Trial*

██ In *People v. Otis* (1999) 70 Cal.App.4th 1174 [83 Cal.Rptr.2d 326], we held that counsel for a person challenging an MDO certification may waive jury trial without the consent of his client. (*Id.*, at pp. 1175–1176.) Because the trial court relied on *Otis* to enforce counsel's decision, appellant draws the inference and contends that he was "forced" to waive his right to counsel in order to assert his right to jury trial. The record, however, does not support this inference. Appellant was not "forced" to do anything and the trial court went to great lengths to be fair to him. First, it was not required to allow appellant to represent himself. (*People v. Williams, supra,* 110 Cal.App.4th at pp. 1588, 1591–1592.) Second, it was not required to allow appellant to successfully reassert the right to jury trial after a valid waiver by counsel. Third, the record shows that the trial court assisted appellant in the cross-examination of the People's witnesses and in the presentation of his case.

We decline the invitation to overrule *Otis* and continue to believe that it was correctly decided. The instant case could serve as a paradigm for why a person with a severe mental disorder should not be allowed to veto his attorney's decision to waive jury, waive the right to counsel, and insist on self-representation. As indicated, appellant has made some poor choices but his perceived dilemma is self-created.

The judgment is affirmed.

Coffee, J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 17, 2006, S141594.