Filed 5/16/13  P. v. Sepulveda CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ZOLIO SEPULVEDA,<br><br>    Defendant and Appellant. | 2d Crim. No. B244674<br>(Super. Ct. No. F478634)<br>(San Luis Obispo County) |

Zolio Sepulveda appeals the judgment declaring him to be a mentally disordered offender (MDO) and committing him to the Department of Mental Health (now State Department of State Hospitals) for treatment.  (Pen. Code, § 2962 et seq.)[1] Appellant contends that no evidence was offered to support the trial court's findings that appellant's commitment offense of second degree burglary (§ 459) involved the use of force or violence.  The People concede the point.  Accordingly, we reverse and remand.

FACTS AND PROCEDURAL HISTORY

Appellant was convicted of second degree burglary and was sentenced to four years in state prison.  After being paroled on November 29, 2008, appellant committed numerous parole violations and was returned to prison.

---

[1] All further statutory references are to the Penal Code.

Prior to appellant's release, the Board of Parole Hearings (BPH) determined that he met the criteria for MDO treatment. Appellant timely filed a petition challenging that determination and waived his right to a jury.

Dr. Phylissa Kwartner, a clinical psychologist at Atascadero State Hospital (ASH), testified at the hearing on behalf of the prosecution. Dr. Kwartner interviewed appellant[2] and spoke with his treatment team. She also reviewed appellant's medical and legal records and prior MDO evaluations. Based on this information, Dr. Kwartner opined that appellant met the criteria for MDO treatment.

Appellant suffers from schizoaffective disorder, which qualifies as a serious mental disorder under the MDO law. He has been in treatment since at least the 1980's and has a family history of mental illness. His symptoms include paranoid delusions, auditory hallucinations, tangential speech, dysphoria, anxiety, and irritability.

Dr. Kwartner concluded that appellant had been convicted of a crime of force or violence. She based her conclusion on the contents of a document prepared by the Department of Corrections and Rehabilitation with regard to appellant's most recent parole violation. The document reflected that on August 13, 2011, appellant pulled out a knife during a confrontation with two security guards at a transit station in San Diego. Appellant was arrested and charged with carrying a concealed dirk or dagger, in violation of former section 12020, subdivision (a)(4). Since appellant was on parole for burglary at the time of the incident, the charge was referred to the BPH as a parole violation.

Dr. Kwartner also concluded that appellant's mental illness was a cause or aggravating factor in his commission of the offense. A parole report from the week after the offense indicated that appellant was experiencing psychiatric issues at the time. Appellant offered paranoid explanations for the offense, believing that the government had sent the security guards to hurt him. He had also been placed in a mental health crisis bed as a result of hallucinations within a month of the offense and experienced suicidal ideation throughout the period.

---

[2] Dr. Kwartner was only able to interview appellant for about five minutes because he became agitated and left the room.

Dr. Kwartner opined that appellant's mental illness was not in remission as of the date of the BPH hearing. Appellant exhibited psychiatric symptoms before and after the BPH hearing. Shortly before the hearing, he was preoccupied with internal stimuli and was talking to himself. Dr. Kwartner also opined that appellant had received at least 90 days of treatment during the year prior to his BPH hearing. Appellant was not following a treatment plan, refused to take his medication, and only attended about two percent of his treatment groups.

Dr. Kwartner further opined that appellant continued to represent a substantial danger of physical harm by reason of his mental disorder. Appellant had a lengthy criminal history along with a history of methamphetamine use, with many instances of threatening behavior at times he was experiencing symptoms of his illness. He had also previously been found in violation of parole for committing a battery and making criminal threats.

Appellant presented no evidence on his own behalf.

At the conclusion of the trial, the court found that appellant met the MDO criteria and accordingly denied his petition and ordered him committed for treatment. Appellant timely appealed.

DISCUSSION

Appellant contends the order committing him for MDO treatment must be reversed because no evidence was offered to prove that his commitment offense of second degree burglary involved the use of force or violence. We accept the People's concession of the point.

To satisfy the MDO criteria, the prosecution must prove the defendant suffers from a severe mental disorder that was a cause or aggravating factor "in the commission of a crime for which the [defendant] was sentenced to prison." (§ 2962, subd. (b).) The MDO criteria further makes clear that the crime must be one for which "[t]he defendant received a determinate sentence pursuant to Section 1170 . . . ." (*Id.* at subd. (e)(1).) As relevant here, the crime must also be one in which the prisoner either "used force or violence, or caused serious bodily injury" (*id.* at subd. (e)(2)(P)); or

3

"expressly or impliedly threatened another with the use of force or violence likely to produce substantial physical harm in such a manner that a reasonable person would believe and expect that the force or violence would be used" (*id*. at subd. (e)(2)(Q)).

Dr. Kwartner's testimony that appellant's commitment offense was a crime of force or violence erroneously focused on the facts of appellant's most recent parole violation for carrying a concealed dirk or dagger, rather than the second degree burglary for which he was sentenced to prison. As the People correctly concede, a parole violation is insufficient to support a commitment under the MDO law. (See *People v. Penner* (1980) 111 Cal.App.3d 168, 172 [term served on a parole violation is not a sentence for purposes of the Determinate Sentencing Law]; *People v. Mathews* (1980) 102 Cal.App.3d 704, 713 [defendant returned to prison on a parole violation not serving a sentence for purposes of § 669's consecutive sentencing provisions].)

Because no evidence was offered to prove that appellant's commitment offense of second degree burglary was a crime of force or violence, the MDO commitment order must be reversed. The People ask us to remand the matter for a retrial of the issue, noting that double jeopardy principles do not apply. (See *People v. Burroughs* (2005) 131 Cal.App.4th 1401, 1407, fn. 2.) Appellant contends that relitigation of the issue whether his commitment offense was a crime of force or violence is precluded by the doctrines of res judicata and collateral estoppel. He further claims that a remand would violate the requirement that MDO certifications must be made "[p]rior to release on parole" as provided under section 2962.

There is no obstacle to a remand of the case for a determination of whether the commitment offense qualified appellant for treatment as an MDO. "The doctrines of res judicata and collateral estoppel prevent a losing party from relitigating causes of action or issues against the prevailing party *after a final judgment*. [Citation.]" (*City of Santa Paula v. Narula* (2003) 114 Cal.App.4th 485, 490, italics added.) The People do not seek to relitigate a claim or issue that either was or could have been raised in prior proceedings that resulted in a final judgment.

4

Moreover, our ruling does not disturb appellant's preparole certification as an MDO. Appellant resorts to speculation in asserting that his evaluation and certification focused on his parole violation rather than his commitment offense.[3] In any event, he offers no authority for the position that a prisoner cannot be recertified as an MDO following the reversal of a commitment order where, as here, the original certification was completed prior to the prisoner's scheduled parole release date. Because the error does not invoke timeliness requirements, the public has a strong and compelling interest in the proper treatment of individuals who qualify as MDO's, and appellant will suffer no unfairness if the issue regarding the nature of his commitment offense is relitigated, remand is both necessary and appropriate.[4]

DISPOSITION

The MDO commitment order is reversed. The matter is remanded for the limited purpose of deciding whether appellant's commitment offense of second degree burglary involved force or violence or an express or implied threat thereof, as

---

[3] Subdivision (d)(1) of section 2962 identifies the certification criteria in pertinent part as follows: "Prior to release on parole, the person in charge of treating the prisoner and a practicing psychiatrist or psychologist from the State Department of State Hospitals have evaluated the prisoner . . . and a chief psychiatrist of the Department of Corrections and Rehabilitation has certified to the Board of Parole Hearings that the prisoner has a severe mental disorder, that the disorder is not in remission, or cannot be kept in remission without treatment, that the severe mental disorder was one of the causes or was an aggravating factor in the prisoner's criminal behavior, that the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to his or her parole release day, and that by reason of his or her severe mental disorder the prisoner represents a substantial danger of physical harm to others."

[4] Although not expressly framed as such, appellant also asserts that relitigation is barred by the doctrine of judicial estoppel. The doctrine provides that a party who successfully asserts one position in a judicial proceeding is estopped from asserting an inconsistent position in a subsequent proceeding. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181-183.) "The party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that the position was adopted by the first tribunal in some manner such as by rendering a favorable judgment. [Citation.]" (*People ex rel. Sneddon v. Torch Energy Services, Inc.* (2002) 102 Cal.App.4th 181, 189.) Here, we reverse a ruling in favor of the People and remand for a retrial. There is thus neither a judgment in favor of the People nor a subsequent proceeding.

5

contemplated in section 2962, subdivisions (e)(2)(P) and (e)(2)(Q).  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.


6

John A. Trice, Judge

Superior Court County of San Luis Obispo

_____


Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.