Filed 7/31/14  P. v. Kennedy CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PAUL ANDREW KENNEDY,<br><br>Defendant and Appellant. | F067348<br><br>(Super. Ct. No. CF97595449)<br><br>**OPINION** |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Houry A. Sanderson, Judge.

Rachel Lederman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna, Melissa Lipon and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Cornell, Acting P.J., Gomes, J. and Detjen, J.

## INTRODUCTION

Following a bench trial, the court ordered appellant, Paul Andrew Kennedy, recommitted to the State Department of Mental Health for one year for treatment as a mentally disordered offender (MDO) pursuant to Penal Code sections 2970 and 2972.[1] On appeal, appellant contends the evidence was insufficient to support the MDO recommitment order and, alternatively, that the court erred in denying his request that he be released on outpatient status pursuant to section 2972, subdivision (d) (section 2972(d)).  We affirm.

## FACTS

The hearing occurred on May 22, 2013.  The People's witness was Robert Wagner, Ph.D.  Dr. Wagner is a forensic psychologist who contracts to provide services with the Department of State Hospitals, Coalinga, where appellant is a patient.[2] Dr. Wagner evaluated appellant as an MDO, who is a person with a severe mental disability or illness and because of that condition poses a potential danger to others.  Dr. Wagner explained that appellant suffers from paranoid schizophrenia that has symptoms such as agitation, delusions, hallucinations, disorganized thinking, and difficulty expressing emotions.  In paranoia, the patient exhibits suspiciousness, grandiose delusions, and persecutory delusions.

Appellant exhibited difficulty with reality contact because he has delusional beliefs that he is rich and of some importance.  At times he is the King of England, other times he believes he is the President of the United States.  During Dr. Wagner's testimony, appellant interrupted Dr. Wagner to state that he is always the King of England.  Appellant asked for books on the New York Stock Exchange, with the goal to

---

[1]     Except as otherwise indicated, all statutory references are to the Penal Code.

[2]     Except as otherwise indicated, our factual summary is taken from Dr. Wagner's testimony.

control it.  He also had delusions about the NASDAQ.  Appellant was delusional about either being Margaret Thatcher's child or being Margaret Thatcher's father.

Dr. Wagner interviewed appellant in October 2012 and in May 2013.  The first interview was requested by appellant, but ended early because appellant was nervous and wanted it over.  Appellant believed he was the King of England and did not know the date.

Dr. Wagner interviewed appellant in May 2013.  When Dr. Wagner asked appellant if he had spoken to his attorney, appellant replied that he did not need an attorney because he had been to the Supreme Court.  Appellant believed he had an address in Washington, D.C.

Appellant did not believe he had a mental illness, but admitted he was depressed at times and that the medication he was given helped him sleep.  When asked about the crime appellant was charged with in 1997, appellant explained that nothing had happened.  Appellant told Dr. Wagner he had talked to the military about this and to the President of the United States.  Appellant ended the conversation with Dr. Wagner and left the room.

Dr. Wagner explained that appellant was taking antipsychotic medications, although Dr. Wagner was not positive which medications appellant was taking. Appellant does not take his medications willingly and appellant's psychiatrist believed the medications were effective "up to a point."  Appellant believes he does not need medications and they are administered involuntarily pursuant to a court order. Dr. Wagner believes appellant has been diagnosed with a mental disorder and that it is severe.

Appellant's mental illness was not in remission at the time of the hearing. Dr. Wagner did not believe appellant's illness could be kept in remission without continued treatment.  Without medications, Dr. Wagner believed appellant would rapidly deteriorate and become paranoid, delusional, and oppositional.  During a stay in Fresno

County Jail within the preceding year, the jail failed to administer medications while appellant was incarcerated there for three months and he returned to the hospital believing he was a Russian boxer.

Concerning appellant's MDO status, Dr. Wagner believed appellant still presented a risk to others if out in the community. At the time of the original offense, appellant was delusional and psychotic when he attempted the sexual molestation of a young family member. The attempted crime appeared to be spontaneous, was not well thought out, was disorganized, and there was no predatory element to it. The attempted offense occurred sometime after appellant exhibited bizarre behavior. Appellant was immediately hospitalized. He was tried and convicted, sentenced to state prison, and was later evaluated and found to be an MDO. Thereafter, appellant was hospitalized.

Appellant battered an inmate in 2000 with the use of a weapon while in prison. In September 2002, appellant would become agitated and threaten to kill anyone who came through the door. Appellant was initially hostile to taking medications and told authorities that if they poisoned him, they would eat their own poison. When asked in 2008 if he would attend a hearing to determine whether he would be involuntarily medicated, appellant asked the questioner if that person wanted to become a cadaver. In 2009, appellant adopted a tense posture with a person he believed was the president of a bank and told the person he would kill him and take his cash. Dr. Wagner believed appellant would pose a substantial danger of physical harm if released from the hospital.

At the time of the offense, appellant was actively psychotic and delusional. During incarceration and hospitalization, appellant remained psychotic. Medications had to be forced on appellant for at least the previous five years. Dr. Wagner and the psychiatrist he consulted during his evaluation of appellant believed that medications helped appellant with behavioral control, although appellant's psychotic beliefs continue to be strong. Appellant has stated that he does not have a serious mental illness and does

4.

not want to take medications. During the five years he has been on forced medications, there have been no incidents involving physical threats or violence.

Appellant has a history of deteriorating rapidly when he does not take medications and there was no guarantee from appellant that he would take medications once in the community. Dr. Wagner explained this would cause appellant to lose contact with the real world and, once doing so, Dr. Wagner believed appellant would pose a strong possibility of danger to others.

Although the hospital runs a large number of groups and offers individual counseling, appellant has refused to participate in therapy. Appellant also has refused to take training or courses in managing his mental illness, medication management, anger management, or social skills. Appellant had a history of drug usage, including alcohol, hallucinogens, LSD, marijuana, and cocaine. Appellant has not availed himself of substance abuse treatment even though it is available at the hospital.

If appellant began to use controlled substances again, it would increase the likelihood of very unpredictable behavior. Everyone in the unit appellant is assigned to at the hospital is aware of appellant's delusional system and no one challenges it. If it was challenged in the community, however, there was the probable potential of violence by appellant. Dr. Wagner opined that appellant's severe mental illness, that was not in remission, posed a substantial risk of physical harm to others if he was released into the community.

## DISCUSSION

Appellant contends the evidence was insufficient to support a finding that he currently represents a substantial danger of physical harm to others and, therefore, the court's order extending him MDO commitment for one year must be reversed. We disagree.

The MDO Act was enacted in 1985. It requires that offenders who have been convicted of violent crimes related to their mental disorders, and who continue to pose a

5.

danger to society, receive mental health treatment until their mental disorder can be kept in remission. (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1061 (*Lopez*), disapproved on another point in *People v. Harrison* (2013) 57 Cal.4th 1211, 1230, fn. 2.) Commitment as an MDO is not indefinite. An MDO is committed for one-year periods and thereafter has the right to be released unless the People prove beyond a reasonable doubt that he or she should be recommitted for another year. (*Lopez, supra,* at p. 1063.)

A recommitment under the MDO law requires proof beyond a reasonable doubt that the patient has a severe mental disorder; the disorder is not in remission or cannot be kept in remission without treatment; and by reason of that disorder, the patient represents a substantial danger of physical harm to others. (§ 2970; *People v. Burroughs* (2005) 131 Cal.App.4th 1401, 1404.)

On appeal, we assess the sufficiency of the evidence to support an MDO commitment under the substantial evidence standard. (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082-1083.) This requires us to determine, on the whole record, whether a rational trier of fact could have found that defendant is an MDO beyond a reasonable doubt, considering all the evidence in the light which is most favorable to the People, and drawing all inferences the trier could reasonably have made to support the finding. The evidence must be reasonable, credible, and of solid value. It is the exclusive province of the trial judge, or jury, to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. (*Ibid.*)

A single opinion by a psychiatric expert that a person is currently dangerous due to a severe mental disorder can constitute substantial evidence to support the extension of a commitment. (See *People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165 [§ 1026.5 commitment].) Expert medical opinion evidence, however, cannot constitute substantial evidence if it is based upon a guess, surmise or conjecture, rather than relevant, probative facts. (*In re Anthony C.* (2006) 138 Cal.App.4th 1493, 1504 (*Anthony C.*).)

6.

Dr. Wagner testified that in his opinion, appellant, by reason of his severe mental disorder, represents a substantial danger to others. Dr. Wagner's expert opinion testimony, in our view, constitutes substantial evidence on this point. Appellant argues it does not, asserting that Dr. Wagner's opinion on the question of appellant's current dangerousness lacks an adequate factual basis.

Here, there was evidence that appellant had a past dependency on drugs, he took his medications involuntarily, his mental illness quickly deteriorated when he stopped taking medications, and the use of illegal drugs exacerbated the worst symptoms of appellant's mental illness, including his paranoia and delusions. When delusional, appellant had a history of violently acting out on those delusions. Even with medications, appellant remained delusional and demonstrated this during the hearing when he corrected Dr. Wagner's testimony that appellant believed he was either the President of the United States, or the King of England, to which appellant stated that he always believed he was the King of England. We agree with appellate counsel that this delusion, by itself, would not be sufficient evidence to continue appellant's commitment. But this was not the only evidence of the effect of appellant's paranoia and delusions before the trial court.

Appellant's ability to achieve remission from his mental health condition is greatly impeded by his failure to attend personal or group therapy, substance abuse classes, or any other training and/or self-help programming in the state hospital. Dr. Wagner testified that therapy, classes, training, and self-help programs are available to patients in the state hospital, but appellant has never participated. The foregoing demonstrates that Dr. Wagner based his opinion that appellant posed a current risk to others in the community not on conjecture and surmise, but on "'relevant, probative facts.'" (*Anthony C.*, *supra*, 138 Cal.App.4th at p. 1504.)

Appellant further bases his contention on the principle that the safeguards of personal liberty embodied in the guaranty of due process in the federal Constitution

7.

prohibit the involuntary confinement of a person on the basis that he or she is dangerously disordered without proof the patient has serious difficulty in controlling his or her behavior. (*People v. Williams* (2003) 31 Cal.4th 757, 759-760, 773-778, quoting *Kansas v. Crane* (2002) 534 U.S. 407, 413; *In re Howard N.* (2005) 35 Cal.4th 117, 127-132.)

Here, there was evidence that appellant, even in the controlled environment of the state hospital, had difficulty controlling his behavior. Appellant has shown no signs of remission of his mental illness, was involuntarily given medications, did not believe he had a serious mental illness, and refused to participate in any treatment or self-help services provided by the hospital. Appellant had a history of his mental health deteriorating quickly in the community by using illegal narcotics and failing to take his prescribed medications. Appellant also had a history while being institutionalized of making threats to physically harm and to kill others. We conclude there was sufficient evidence adduced at the hearing that appellant presents a current risk of harm to the community due to his severe mental illness and find no error in the trial court's recommitment of appellant.

## DISPOSITION

The judgment is affirmed.