Filed 11/13/14  P. v. Hickman CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C074848 |
| Plaintiff and Respondent, | (Super. Ct. No. 108390) |
| v. | |
| CLARENCE BARTHOLOMEW HICKMAN, SR., | |
| Defendant and Appellant. | |

Defendant Clarence Bartholomew Hickman, Sr., appeals from his most recent recommitment to the custody of the State Department of State Hospitals (Department) (formerly the Department of Mental Health; see Stats. 2012, ch. 24, § 63) as a mentally disordered offender (MDO).  (Pen. Code, § 2960 et seq.)[1]  He contends insufficient

---

[1]  Further undesignated statutory references are to the Penal Code.

evidence supports the trial court's order recommitting him. Disagreeing, we shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2013, the People filed a petition seeking defendant's continued involuntary treatment pursuant to section 2970, alleging defendant has a severe mental disorder which is not in remission, or cannot be kept in remission without continued treatment, and that defendant's severe mental disorder represents a substantial danger of physical harm to others (the petition).

On September 11, 2013, the trial court conducted a hearing on the petition. The hearing included the testimony of a single witness, Dr. Kamaljeet Boora, Staff Psychiatrist at Napa State Hospital (NSH). Dr. Boora's testimony included the following:

Defendant was first admitted to NSH sometime after 1990 when, after completing a seven-year state prison commitment for scalding his three-year old son and causing first, second, and third degree burns to the child's body, he was declared an MDO and "assigned to" the Department. Dr. Boora testified that, while defendant had symptoms of a mental disorder at the time of that initial offense, it was unclear from the record as presented to him whether those symptoms contributed to his actions.

In July 2006, after having been on conditional supervised release (sometimes referred to as "CONREP") for several years, defendant violated parole and was readmitted to NSH when he manifested symptoms of mania, including diminished need for sleep, irritability, restlessness, paranoia, and hypersexual and grandiose delusions. At that time, it was believed he had become non-compliant with his psychotropic medication and could no longer be safely managed as an outpatient.

In February 2013, defendant was transferred to Dr. Boora's unit at NSH after defendant obtained the cell phone number of a female staff member and handed a piece of paper with that number on it to the staff member, an act Dr. Boora considered to be a

2

threat to the staff member and "dangerous" because staff members do not give their cell phone information to patients and patients are not supposed to have that information. Dr. Boora did not know how defendant came to be in possession of that information but, based on defendant's "history . . . of aggressive behavior toward women," Dr. Boora considered it to be "an aggressive act."

When asked to elaborate on defendant's history of aggressive behavior, Dr. Boora testified that defendant was charged in 1986 with sexual battery on a 17-year-old girl, a crime for which he ultimately spent time in jail. Upon his release, defendant violated parole when he made harassing telephone calls to his ex-girlfriend and threatened her with physical harm, and made phone calls to personnel at school. In 2000, while at NSH, defendant was having "sexual feeling" toward one of the female NSH staff members. After his return to NSH in 2006, he was once again making telephone calls and sending letters to his ex-girlfriend.

After interviewing defendant and reviewing his records, Dr. Boora concluded defendant had bipolar disorder with psychotic symptoms for which he was prescribed psychotropic medication. According to Dr. Boora, defendant's disorder causes him to have episodes of manic symptoms, including increased energy levels, feelings of grandiosity, hypersexual behavior, irritability, anger, impulsive behavior, and irregular sleep. At the time of the transfer to Dr. Boora's unit, defendant was only sleeping two or three hours a night, his speech was "pressure[d]," and he was impulsive, irritable, and feeling grandiose. Defendant also had psychotic symptoms, as evidenced by his belief that NSH was poisoning patients by pumping gas through the air vents. According to a previous diagnosis, defendant also suffered from antisocial personality disorder for which he had been prescribed additional medications.

After a few weeks of defendant continuing to manifest manic symptoms, Dr. Boora called a meeting of NSH psychiatrists, psychologists, and social workers

3

(otherwise known as a *Harper* hearing)[2] to determine whether defendant in fact needed the medication prescribed to address his mental disorders.  The panel concluded he did.  Thereafter, defendant took his psychotropic medication as ordered.  Dr. Boora noted that he saw improvement when defendant took the prescribed medication.

Dr. Boora considered defendant's bipolar disorder to be severe.  For example, when defendant is in a manic phase he does not sleep, becomes aggressive, and demonstrates impulsive behavior, as evidenced by the 1986 sexual assault.  He does not take his medication and becomes "very psychotic."  Dr. Boora also considered defendant's antisocial personality disorder to be severe when combined with his bipolar disorder.

Dr. Boora opined that defendant's severe mental disorder was not in remission because, *despite* taking his medication, defendant was still having manic symptoms, including feelings of grandiosity and expressive speech, and he "was still psychotic" although he "was improving"; there were also continued issues with his refusal to acknowledge that he needed to take medication and his compliance in that regard.

Dr. Boora further opined that defendant's severe mental disorder cannot be kept in remission without continued treatment because defendant continues to believe he does not need medication or treatment, and his history shows that "whenever he stops taking medication he gets worse."  Moreover, defendant does not have any insight into his mental illness.  He was required to participate in sex offender treatment, but refused because he did not believe he had a mental illness or needed treatment.  He was required to participate in a mental illness education and coping group, and did not participate and refused to develop a wellness recovery plan, because he did not believe he had a mental illness and he believes he can "treat himself."

---

[2] *Washington v. Harper* (1990) 494 U.S. 210 [108 L.Ed.2d 178].

4

According to Dr. Boora, defendant does not have an understanding of his potential for dangerous behaviors and does not understand the symptoms and signs of his mental illness. He simply wants to be released from NSH. However, given that he relapsed after his prior release on CONREP (that is, he became manic, stopped taking his medication, and failed to follow the outpatient treatment program), it was Dr. Boora's opinion that defendant has been unsuccessful on outpatient treatment in the past.

Dr. Boora concluded defendant presently represents a substantial physical danger to others because, when he is in a manic state with psychotic symptoms, he becomes aggressive toward others and, when he is not taking his medication, he has sexual feelings towards staff members. Finding no evidence defendant voluntarily followed through with any treatment, Dr. Boora opined that, if discharged into the community, defendant will not take his medication and will get worse, becoming a danger to society.

On September 13, 2013, the court entered an order for continued involuntary treatment, finding defendant has a severe mental disorder which is not in remission or cannot be kept in remission without treatment, and that defendant represents a substantial danger of physical harm to others. The order recommitted defendant to the Department for one year (through October 20, 2014).[3]

Defendant filed a timely notice of appeal.

## DISCUSSION

"The MDO Act establishes a comprehensive scheme for treating prisoners who have severe mental disorders that were a cause or aggravating factor in the commission of the crime for which they were imprisoned. (See § 2960.) The act addresses treatment in

---

[3] The People do not argue defendant's appeal is moot, despite the expiration of the order committing him during the pendency of this appeal. As defendant urges, we reach the issues because "our decision may still affect the lower court's right to continue jurisdiction under the original commitment as well as [any] recommitment." (*People v. Fernandez* (1999) 70 Cal.App.4th 117, 134-135.)

three contexts--first, as a condition of parole (§ 2962); then, as continued treatment for one year upon termination of parole (§ 2970); and finally, as an additional year of treatment after expiration of the original, or previous, one-year commitment (§ 2972)." (*People v. Garcia* (2005) 127 Cal.App.4th 558, 563.)

"A recommitment under the [MDO law] requires proof beyond a reasonable doubt that (1) the patient has a severe mental disorder; (2) the disorder 'is not in remission or cannot be kept in remission without treatment'; and (3) by reason of that disorder, the patient represents a substantial danger of physical harm to others. (Pen. Code, § 2970.)" (*People v. Burroughs* (2005) 131 Cal.App.4th 1401, 1404 (*Burroughs*); accord *People v. Nelson* (2012) 209 Cal.App.4th 698, 706.) In reviewing the sufficiency of the evidence to support MDO findings, we apply the substantial evidence standard of review, "considering all the evidence in the light which is most favorable to the People, and drawing all inferences the trier [of fact] could reasonably have made to support the finding." (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082.)

Defendant does not argue error in the court's finding the first of the three prongs set out *ante*, that he has a severe mental disorder. Instead, he argues that there was no evidence he committed any acts of aggression or destruction of property during the previous treatment year, which we construe to apply to the second prong--remission--and that his limited group participation and poor wellness recovery plan are not sufficient to demonstrate he is a substantial risk of physical harm to others, which we construe to apply to the second and third--danger of physical harm--prongs. We address the second prong, proof that defendant's disorder is not in remission or cannot be kept in remission without treatment, first.[4]

---

[4] Defendant contends the People have improperly cited in their briefing to two exhibits not admitted into evidence at the commitment hearing--the April 9, 2013, report authored by Dr. Boora which is attached as an exhibit to the petition (Exhibit 1), and an "RN

Section 2962, subdivision (a), "defines the phrase 'cannot be kept in remission without treatment' to mean that one of four specified acts have occurred during the previous year--a violent act except in self-defense, a serious threat, intentional property damage or failure to follow the treatment plan." (*Burroughs, supra*, 131 Cal.App.4th at p. 1407.) Although not dispositive, a defendant's condition a year earlier is relevant to this inquiry. (*People v. Cobb* (2010) 48 Cal.4th 243, 252.) Even accepting as accurate defendant's claim that no evidence showed he committed any acts of aggression or destruction of property, by proving that defendant had failed to follow his treatment plan within the past year, the People proved the conduct necessary to establish that defendant's disorder could not be kept in remission without treatment as that phrase is used in the MDO law. (§ 2962, subd. (a); *Burroughs, supra*, at p. 1407.)

The evidence demonstrated that defendant lacked insight into his mental illness, claiming he was not mentally ill and did not need treatment. "A reasonable person, whose mental disorder can be kept in remission with treatment, must, at minimum, acknowledge if possible the seriousness of his mental illness and cooperate in all the mandatory components of his treatment plan." (*People v. Beeson* (2002) 99 Cal.App.4th 1393, 1399.) Because defendant lacked insight, he did not participate in sex offender treatment as required, he rarely attended group, and he refused to develop a wellness recovery plan, all key components to his remission. Further, although defendant argues he was "medication compliant without any court order," Dr. Boora opined that if defendant were to be discharged, he would refuse to take his medication.

---

Progress Note" dated February 27, 2013 (Exhibit 2). Dr. Boora testified to certain facts contained in those exhibits as a basis for his opinion; the trial court noted that testimony and took judicial notice of Exhibits 1 and 2, but declined to admit them as "substantive proof." To the extent the People's appellate brief cites to these exhibits, we will disregard the references. We will, of course, consider Dr. Boora's *actual* testimony in its entirety.

There is significant evidence in the record to support that opinion. Defendant was placed on outpatient treatment status multiple times without success. In June 2006, while on conditional supervised release, defendant was non-compliant with his psychotropic medications. He was noncompliant again at the time of his transfer to Dr. Boora's unit in February 2013. He did take his psychotropic medication following the *Harper* hearing; however, during the April 10, 2013, monthly meeting, he told Dr. Boora, "I should not be here. I should not be in the hospital. It is against the law. You cannot give me medications. I don't need any medication." Similarly, during the May 14, 2013, monthly meeting, defendant told Dr. Boora, "You need to take me off all medication." Dr. Boora correctly inferred from those statements that it was unlikely defendant would maintain medication compliance were it entirely up to him to do so. Substantial evidence supports the second prong--the court's finding that defendant cannot be kept in remission without treatment. We proceed to the third prong, substantial risk of physical harm.

Defendant argues there was no evidence he ever committed any violence other than scalding his child (an act Dr. Boora could not affirmatively attribute to his bipolar disorder), the sexual battery that occurred some 25 years earlier, and threatening his ex-girlfriend at some unknown time after being paroled. Even if accurate, this argument is not dispositive as to whether defendant presents a substantial danger of physical harm.

" 'Substantial danger of physical harm' does not require proof of a recent overt act." (§ 2962, subd. (f).) At his February 2013 evaluation, defendant was experiencing psychotic symptoms, including hypersexual and impulsive behavior, irritability, and anger. He was sleeping only a few hours a night and was convinced the staff at NSH was trying to poison the patients. He was not medication compliant. Because of his lack of compliance, in previous outpatient treatment his condition had worsened and he had become psychotic. While defendant did begin taking his psychotropic medication following the *Harper* hearing, he continued to manifest manic symptoms.

8

He had been transferred to Dr. Boora's unit because he gave a female staff member--someone he knew, he "had love feeling[s] for," and he wanted to marry--a piece of paper containing *her* personal cell phone number. Although defendant argues the sexual feelings he had toward female staff members were not harmful, we consider defendant's behavior against the backdrop of the nature and symptoms of his disorder, his history of aggressiveness (particularly toward women), his lack of compliance with treatment--including medication--and his generally negative insight and attitude toward his treatment program, all of which inform the determination that he represents a substantial danger to others. (See § 2970; *Burroughs, supra*, 131 Cal.App.4th at p. 1404.)

We conclude that substantial evidence supports the trial court's order of recommitment.

## DISPOSITION

The judgment is affirmed.

_____DUARTE_____, J.

We concur:

_____RAYE_____, P. J.

_____HULL_____, J.